> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 19, 2021[*]
Decided March 19, 2021

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 20-2060

| | |
|---|---|
| ROBERT PEACHER, <br> *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *v.* | No. 1:18-cv-03044-JRS-MJD |
| PAUL A. TALBOT, et al., <br> *Defendants-Appellees*. | James R. Sweeney II, <br> *Judge*. |

## O R D E R

Robert Peacher, an Indiana prisoner, sued prison staff and medical providers for failing to authorize the trimming of his facial hair with an electric shaver. After the district court found that Peacher had forged a memo from his doctor purportedly

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

forbidding electric trims, it dismissed his suit as a sanction for falsifying evidence and lying about it. The court responded reasonably to Peacher's deceit, so we affirm.

Peacher suffers from facial neuropathy. According to his complaint, it causes him extreme pain if his face is not shaved with an electric trimmer. Prison doctors ordered the prison's barber to shave him, which satisfied Peacher until Dr. Paul Talbot became his primary physician and the doctor allegedly refused to renew that medical order or prescribe pain relievers for him. Peacher asked others to intercede, but when his requests went unanswered, he sued them and Dr. Talbot for deliberate indifference.

The litigation was contentious. Peacher moved for summary judgment and relied on his medical records. But unlike his allegations, these showed that in early 2019 Dr. Talbot ordered the prison's barber to shave Peacher regularly. Despite the presence of recruited counsel, Peacher also moved pro se for "emergency" relief, asserting that the defendants had blocked discovery and retaliated against him with torture, starvation, and no medical care. After the court rejected these claims as unproven, the defendants warned him that they would seek sanctions if he continued to litigate vexatiously.

At his deposition, Peacher unveiled a document that he said he had found in the trash months earlier. Purportedly created in late 2018, sent to two nurses, and signed "Dr. Paul Talbot, M.D.," it instructs that Peacher must remain in pain and never receive a renewed medical order regarding the barber:

> I instructed Nurse Meyers not to renew Offender Robert Peacher's, DOC# 881627, medical order, but it was renewed for a year with your signature. This is not to happen again by anyone. Offender Peacher will have to deal with his pain on his own.

Peacher said that an unnamed nurse tipped him off to "search the trash" for the memo. In response, Talbot swore he has never seen the stationery used in the memo, the signature is not his, he has never signed his name as "Dr. Paul Talbot, M.D.," which is redundant, and he has never suggested that a patient must "deal with his pain on his own." The purported recipients of the memo swore, too, that they had never seen it.

The defendants moved to dismiss Peacher's suit as a sanction under Federal Rule of Civil Procedure 11, contending that the memo was forged and refuted by Peacher's medical records. After his counsel advised Peacher about the consequences of perjury, Peacher maintained that the memo was genuine. He attested that he did not have access

to a scanner or copier, so he could not have forged the memo, and two nurses had said the signature in the memo resembled Talbot's. The defendants added that Peacher's facility was investigating him for forging other documents and that he had lied under oath in another case. *See Peacher v. Plant*, No. 1 1:19-cv-04773-JRS-DLP (S.D. Ind. filed Dec. 3, 2019).

Bypassing a live hearing, the district court ruled that only one conclusion was plausible—the memo was forged. It highlighted that Peacher's medical records, which Peacher had told the court to rely on, refuted the memo: After Dr. Talbot supposedly wrote the memo prohibiting "anyone" from ordering barber-provided shaves for Peacher, he ordered the prison's barber to shave Peacher. Second, Peacher's conduct refuted his assertions. He testified that he "found" the memo several months before his deposition, but he inexplicably did not say anything then about his discovery, despite his duty to do so. *See* FED. R. CIV. P. 26(e). (The court also noted that Peacher was credibly accused of other forgeries, but it refrained from finding that Peacher "made forging documents a routine activity.") The court considered the lesser sanction of fees (which it said would be ineffective because of Peacher's indigency) and the heavier sanction of a filing bar, but it settled on dismissal with prejudice as striking the right balance. Peacher asked for reconsideration, asserting that he could name the nurse who led him to the trash and that two other witnesses would testify that the signature on the memo resembled Talbot's. The court denied the request, reasoning that this information did not refute the evidence of fabrication.

On appeal, Peacher contests the dismissal on several procedural grounds. We review for abuse of discretion the dismissal of a case as a sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 (1991); *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 782 (7th Cir. 2016). District courts have "inherent power to sanction a party who has willfully abused the judicial process or otherwise conducted litigation in bad faith." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) (internal quotation marks omitted). Using their "sound discretion," courts may dismiss suits with prejudice when a party has forged evidence that affects a case's merits, for such conduct "undermines the most basic foundations of our judicial system." *Id.* at 402; s*ee also Rivera v. Drake*, 767 F.3d 685, 686 (7th Cir. 2014).

Peacher first challenges the lack of a live hearing, but his challenge fails. The court sanctioned him under Rule 11, which requires only that he receive notice of the proposed sanction and "a reasonable opportunity to respond." FED. R. CIV. P. 11(c)(1); *see Morjal v. City of Chicago*, 774 F.3d 419, 422 (7th Cir. 2014); *Dal Pozzo v. Basic Mach. Co.*,

463 F.3d 609, 613 (7th Cir. 2006). A live hearing is necessary only if it "could assist the court in its decision." *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1495 (7th Cir. 1989); *see also Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1230–31 (10th Cir. 2015); *Pac. Harbor Cap., Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1118 (9th Cir. 2000); *Childs v. State Farm Mut. Auto. Ins. Co.*, 29 F.3d 1018, 1027 (5th Cir. 1994). But a live hearing could not have assisted the court here because its ruling did not rest on sworn testimony. Peacher told the court to rely on his medical records, and they show that Dr. Talbot *ordered* barber trims. Peacher does not explain why the physician would order the trims and yet, shortly before doing so, permanently forbid "anyone" from ordering them, as the memo suggests. Peacher also urged the court to rely on him, but his conduct—his silence about the memo when he "found" it, despite his duty to speak up then and his unexplained silence—further undercuts his assertion that he found it. These facts dispelled the need for a hearing. *See Sullivan v. Running Waters Irrigation, Inc.*, 739 F.3d 354, 360 (7th Cir. 2014) (remand for a live hearing not required when record amply supported court's finding and "it is unlikely that the absence of the credibility observations would disturb" the finding).

Peacher's next two challenges are also meritless. First, he objects to the district court's willingness to consider other charges of deception. But the court declined to find that Peacher forged documents routinely, and its conclusion that Peacher could forge a document, even without access to a scanner or copier, did not depend on the existence of past forgeries. Second, Peacher argues that his recruited counsel failed to advise him to respond more effectively to the sanctions motion. (Counsel, Peacher asserts, advised him that the court would hold a live hearing at which Peacher could testify.) But counsel's advice does not warrant reversal, as a civil litigant is not entitled to recruited counsel. *See Wilborn v. Ealey*, 881 F.3d 998, 1008 (7th Cir. 2018).

Finally, Peacher argues the district court erred in denying his motion for reconsideration. He faults the court for treating the motion under Federal Rule of Civil Procedure 59(e). Instead, he argues that the court should have considered his motion under Rule 60(b)(1), based on his attorneys' "mistake" and "excusable neglect" in believing the court would hold a live evidentiary hearing. But a motion to alter a judgment "is deemed filed under Rule 59(e) of the civil rules . . . if the motion is filed within 10 days after entry of the judgment." *Borrero v. City of Chicago*, 456 F.3d 698, 699 (7th Cir. 2006) (The 10-day limit is now 28 days. *See* Fed. R. Civ. P. 59(e)). Peacher's filing fell into that window. And the court reasonably ruled that Peacher's new evidence did not affect its rationale for finding that the memo was forged. Moreover, even under the Rule 60(b) standard, Peacher would not have prevailed. He argues that

his attorneys' mistaken belief that the court would hold an evidentiary hearing was "excusable neglect." But Rule 60(b) relief is "an extraordinary remedy and is granted only in exceptional circumstances." *McCormick v. City of Chicago*, 230 F.3d 319, 327 (7th Cir. 2000) (internal citations omitted). Strategic decisions, such as recruited counsels' decision to respond to the motion for sanctions with affidavits (rather than insist on a live testimony), do not meet this high standard. *Id.*

AFFIRMED